**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HANFI MAHMOUD,<br><br>      Plaintiff,<br><br>  v.<br><br>RITE AID CORP., MARK LATKA, JOHN DOES 1-10, and XYZ CORP. 1-10,<br><br>      Defendants. | Civil Action No. 2:11-cv-06363-SDW<br><br>**OPINION**<br><br>August 16, 2012 |

**WIGENTON, District Judge.**

Before the Court is defendants Rite Aid Corporation ("Rite Aid") and Mark Latka's ("Latka") (collectively "Defendants") motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"), Counts I-III and IX-XI of plaintiff Hanfi Mahmoud's ("Plaintiff") First Amended Complaint ("Amended Complaint").

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367(a), and 28 U.S.C. §§ 1441(a), (b) and (c).

On August 7, 2012, oral argument was scheduled to take place before this Court, and Plaintiff's counsel placed comments on the record.[1] In response, after reviewing the transcript, counsel for Defendants submitted a letter on August 8, 2012 ("August 8, 2012 Letter").

---

[1] Defendants' counsel did not appear as scheduled, but indicated confusion regarding the scheduling and text order. (Defs' Aug. 7, 2012 Letter.)

For the reasons stated herein, this Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion. The Court will dismiss Counts IX-XI; however, this matter will be stayed with respect to Counts I-III as discussed below.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a man "of Arab race and Middle Eastern origin, who was born in Egypt and whose religion is Muslim." (First Am. Compl. ¶ 4.) In 1999, Plaintiff began working for Rite Aid Corporation ("Rite Aid"), where he held the title of "Store Manager." (*Id*. at ¶¶ 4, 12.) Plaintiff alleges that he "performed his work duties in an exemplary manner." (*Id.* at ¶ 13.) In 2006, Plaintiff was allegedly sent to work for a period of three weeks at a newly opened Rite Aid store in Paterson because of his ability to make stores more profitable. (*Id.* at ¶¶ 14-15.) Plaintiff alleges that he "continued his success in serving as a Store Manager and [in] making [] store[s] successful" at several different Rite Aid locations in Newark during the subsequent years. (*Id.* at ¶ 22; *see also id.* at ¶¶ 16-21, 23.)

In September 2009, Plaintiff was allegedly "selected to turn around the East Orange location of Rite Aid," which "was considered a problem store." (*Id.* at ¶¶ 24-25.) There, Plaintiff worked "exceptionally long hours." (*Id*. at ¶ 27.) For example, in or around April or May 2010, Plaintiff alleges that he worked "5 consecutive shifts from 7am until 7pm the next day," or "36 hours straight." (*Id.* at ¶ 28.) Around this time, "Rite Aid . . . recognized [Plaintiff]'s exceptional abilities and knowledge of Rite Aid policies and procedures" by selecting him to train new employees at a former Eckerd Pharmacy store that was being converted into a Rite Aid. (*Id.* at ¶¶ 32-33.)

According to Plaintiff, Rite Aid generally requires its Store Managers to work "at least ten and one-half hours per day, at least five days per week." (*Id*. at ¶ 38; *see id.* at ¶¶ 35, 37.)

2

Moreover, during Rite Aid's November to December holiday season, Plaintiff alleges that he was required to work "a minimum of sixty-three hours each week." (*Id.* ¶¶ 41-43.) Further, Plaintiff alleges that he was required to work a minimum of six days per week during his entire first two years with Rite Aid. (*See id.* at ¶ 39.) Plaintiff was never paid overtime while working at Rite Aid, but alleges that the duties of a Store Manager, which are limited in discretionary powers and supervisory ability, are those of a "non-exempt employee who should have been paid overtime [] for hours worked over 40 hours per week." (*Id.* at ¶ 52; *see id.* ¶¶ 51-53.)

In July 2010, after being made aware of his eligibility to become a third party plaintiff in a class action lawsuit against Rite Aid under the Fair Labor Standards Act ("FLSA"), Plaintiff approached Defendant Latka, a non-Muslim Caucasian American who was the local District Manager for Rite Aid. (*See id.* at ¶ 6, 57-58.) Latka was displeased with Plaintiff's stated intention to join the suit. (*See id.* at ¶ 61.) Latka asserted "that [Plaintiff] had no entitlement to overtime and further stated that he should not be helping other Rite Aid employees sue Rite Aid." (*Id.* at ¶ 64.) On August 18, 2010, Plaintiff completed a consent form that would make him a party against Rite Aid in the pending class action lawsuit ("Consent Form"). (*See id.* at ¶ 66.) He then showed it to Latka and Rite Aid Loss Prevention Manager David Harper ("Harper"). (*See id*.)

Soon after mailing the Consent Form to the U.S. District Court, Plaintiff was approached by Latka, who questioned him about his recent approval of sick leave for Mohamed Siddiq ("Siddiq"), a Rite Aid employee "whose race is Arab, religion is Muslim and national origin Middle Eastern." (*Id.* at ¶ 67; *see id.* at ¶¶ 68-69.) In response, Plaintiff noted that "he merely followed the company's policy on approving sick leave." (*Id.* at ¶ 70.) Latka allegedly asked if the fact that "Siddiq was also Arab" was the reason Plaintiff granted the request and why

3

Plaintiff did not approve a similar request from a female African American employee. (*See id.* at ¶¶ 72, 74.) Offended, Plaintiff reiterated that he had simply followed company policy. (*See id.* at ¶¶ 73. 79.) Plaintiff also stated that he had approved the sick leave request of the African American employee and that the documentation was in his binder, which he allegedly offered to show Latka. (*See id.* at ¶ 78.) Latka declined to see it, and "stated that [Plaintiff] should notify him, by [Rite Aid's internal message system], about sick requests of [Plaintiff]'s associates in the future." (*Id.* at ¶ 85; *see id.* at ¶ 79.) Plaintiff asked where that policy could be found, articulating his impression that he would not be required to follow such a procedure unless he was requesting sick leave for himself. (*See id.* at ¶ 86.) Plaintiff then asked Latka if the inquiry had something to do with his decision to become part of the class action lawsuit against Rite Aid. (*See id.* at ¶ 87.) Allegedly, Latka had no response to either question. (*See id.* at ¶ 88.)

According to Assistant Store Manager Milagros Mercado ("Mercado"), on August 20, 2010, Plaintiff's scheduled day off, Pharmacy District Manager Lisa Rodriguez visited the store, wrote a report, and left. (*See id.* at ¶ 91.) Mercado noted "that on the same day, a security guard who worked for Harper went into [Plaintiff]'s office" and emerged with documents. (*Id.* at ¶ 92; *see id.* at ¶ 93.) On or around August 24, 2010, Latka visited the store for a "spot inspection." (*See id.* at ¶ 94.) Latka failed Plaintiff for (1) not creating a Workforce Report; (2) not completing a planogram[2]; and (3) poor store condition and backroom condition. (*See id.* at ¶¶ 94, 97-98.) Plaintiff alleges that he advised Latka that "he had created the [Workforce] [R]eport two (2) days earlier and further stated that it was in the computer," and that "a copy of the report was posted in his office." (*Id.* at ¶¶ 95-96.) Plaintiff further alleges that the planogram was

---

[2] A planogram is "a diagram or model that indicates the placement of retail products on shelves in order to maximize sales." *Planogram Definition*, OxfordDictionaries.com, http://oxforddictionaries.com/definition/american_english/planogram?region=us (last visited July 12, 2012).

4

completed and that "there was no backroom violation as all merchandise was where it was supposed to be." (*Id.* at ¶ 100; *see id.* ¶ 97.) Although Plaintiff asked Latka for specifics regarding the failing marks, Plaintiff claims that Latka was not responsive and did not adjust the failing marks. (*See id.* at ¶¶ 99, 102.)

On August 28, 2010, Latka once again visited Plaintiff, this time requesting that Plaintiff "go to the safe and count the money in the safe." (*Id.* at ¶ 103.) Plaintiff counted the money, which was "correct to the exact dollar and cents." (*Id.*) "Latka then informed [Plaintiff] that he was being suspended for payroll fraud because he approved the sick hours for Siddiq." (*Id.* at ¶ 104.) Latka provided Plaintiff with a pre-written counseling letter and notified Plaintiff that his suspension would last three days. (*See id.* at ¶¶ 105-06.) On September 2, 2010, after three days had already passed, Plaintiff called Latka, asked to return to work, and shared his belief that Latka was keeping him from work in retaliation for his decision to join the class action lawsuit against Rite Aid. (*See id.* at ¶ 106.) Latka stated that he was unsure of Plaintiff's status and that Plaintiff would not be allowed to return to work until Rite Aid gave him more information. (*See id.* at ¶ 107.) On September 10, 2010, Plaintiff called Rite Aid Human Resources Manager Brent Purdue ("Purdue") to inquire about his work status. (*See id.* ¶ 108.) Purdue informed Plaintiff that Latka would be making the decision as to whether and when Plaintiff could return. (*See id.* ¶¶ 108-09.) Next, Plaintiff called Harper, who, having had a conference call with the Vice President of Rite Aid, informed Plaintiff that "some people felt he should not return to work." (*Id.* at ¶ 111.)

On September 15, 2010, after at least one failed attempt to reach Latka by phone, Plaintiff spoke with Latka again. (*See id.* at ¶¶ 110, 112.) Latka informed Plaintiff that "he was being terminated for not following the policy in approving Siddiq's request for sick leave." (*Id.*

5

at ¶ 112.) Plaintiff called Purdue to ask for documents explaining the reasoning for his termination, but "Purdue stated that he would not send him anything, and hung up on [Plaintiff]. (*Id.* at ¶ 113, 114.) At the time he was terminated, Plaintiff was receiving an annual salary of $53,000.00, with medical and 401k benefits, life insurance, company paid holidays, three weeks paid vacation, and bereavement leave. (*Id.* at ¶ 117.)

On August 24, 2011, Plaintiff filed his Complaint in the Superior Court of New Jersey in Hudson County, and on October 28, 2011, the matter was removed to this Court. On January 3, 2012, Plaintiff filed his Amended Complaint. On January 20, 2012, Defendants filed their Motion.[3]

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether a claim for relief is plausible on its face, a court may "draw on its judicial experience and common sense" to determine whether "the plaintiff [has pled] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678-79 (internal citations omitted). However, "recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Id.* at 678 (citing *Twombly*, at 555.)

---

[3] On July 27, 2012, Defendants also filed a motion to add an omitted exhibit. (*See* Dkt. No. 18.)

### III. DISCUSSION

#### a. Defendants' Motion to Dismiss Counts I-III

Plaintiff's Amended Complaint alleges that Defendants violated the following: the New Jersey Wage and Hour Law ("NJWHL") (Count I); the New Jersey Wage Payment Act ("NJWPA") (Count II); and the Fair Labor Standards Act of 1938 ("FLSA") (Count III). (*See* First Am. Compl. ¶¶ 119-31.) Defendants base their Motion to dismiss all three of these counts on the "first-to-file" or "first-filed" rule. (*See* Defs.' Mot. Dismiss Pl.'s First Am. Compl. 11, Dkt. No. 13-2 ("Defs.' Br." 11.))

The "first-filed" rule was adopted by the Third Circuit in 1941, when it concluded that "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'" *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)). The rule was adopted to avoid the economic inefficiency and judicial inequity that results from duplicative litigation. *See Crosley Corp.*, 122 F.2d at 930. It is intended to "encourage[] sound judicial administration and promote[] comity among federal courts of equal rank." *E.E.O.C.*, 850 F.2d at 971. "Consistent with these principles, the first-to-file rule gives courts the power to stay, enjoin, or transfer a later-filed case." *Allianz Life Ins. Co. of N. Am. v. Estate of Bleich*, No. 08-cv-668, 2008 WL 4852683, at *3 (D.N.J. Nov. 7, 2008) (internal citation omitted).

Although "[s]ome circuits have interpreted the first-filed rule liberally, applying it when two actions involve a 'similarity of core issues' or a 'closely related question[,]' . . . the Third Circuit Court of Appeals has interpreted the 'first-filed' rule narrowly, holding that it only applies to 'truly duplicative' proceedings." *Kedia v. Jamal*, No. 06-6054, 2007 WL 1239202, at *3 (D.N.J. April 25, 2007) (internal citations omitted). As such, the rule applies only to

proceedings already before another district court, which involve: (1) the same issues; and (2) the same parties ("First-Filed Test").  *See E.E.O.C. v. Univ. of Pa.,* 850 F.2d at 971.

In the instant matter, first, Defendants contend that Counts I-III meet the first prong of the First-Filed Test because Plaintiff is attempting to litigate claims that are "identical and substantially similar" to the claims pending in *Indergit v. Rite Aid Corp., et al.*, Nos. 08 CIV. 9361 and 08 CIV. 11364 in the Southern District of New York ("*Indergit*").[4]  *Indergit* is "an FLSA opt-in collective action[5] filed against Rite Aid in October 2008 . . . in which Plaintiff filed a Consent to Become a Party Plaintiff [] on September 3, 2010."  (Defs.' Br. 11, 13, Ex. A.)  Both the current action and *Indergit* include claims asserted pursuant to the FLSA.  Rather than the NJWHL and NJWPA claims in the instant matter, plaintiffs in *Indergit* assert claims under the New York Labor Law.  *See Indergit*, 2010 WL 2465488, at *1.  Nevertheless, the core allegation in *Indergit* under the FLSA is "that Rite Aid misclassified plaintiff Indergit and other store managers as executive employees who were exempt from the FLSA's overtime provisions when, in fact, they were performing primarily nonmanagerial work and were entitled to overtime pay."  *Id.* at *1.[6]  Likewise, for purposes of Counts I-III, Plaintiff alleges that he was misclassified as an "exempt" employee for purposes of the FLSA and New Jersey state wage laws, that he performed mainly nonmanagerial work, and that he is owed overtime pay as a

---

[4] *See Indergit v. Rite Aid Corp., et al.*, Nos. 08 CIV. 9361, 08 CIV. 11364, 2010 WL 2465488 (S.D.N.Y. June 16, 2010).

[5] A collective action is different from a class action insofar as prospective members of the represented group of plaintiffs must "opt in," by providing their consent to join the suit in writing.  *See Knepper v. Rite Aid Corp.*, 675 F. 3d 249, 257 (3d Cir. 2012) (citing 29 U.S.C. § 216(b)).  Because FLSA plaintiffs are required to provide written consent to become part of large suits against their employers, class actions, which provide automatic representation to class members unless they "opt out," are unavailable to FLSA plaintiffs.  *See id.*

[6] Defendants provided the *Indergit* amended complaint as an Exhibit.  (Defs.' Br. Ex. B.)  The cited *Indergit* opinion was pulled from Westlaw.

result.  (*See* First Am. Compl. ¶¶ 44-56.)  Furthermore, as Defendants point out, "the NJWHL contains overtime pay provisions that are substantially similar to the FLSA."  Defs.' Br. 13-14; *compare* 29 U.S.C. § 213(a)(1) (FLSA's overtime pay provisions do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity") *with* N.J. Stat. Ann. § 34:11-56a4 (NJWHL's overtime pay provisions do not apply to "any individual employed in a bona fide executive, administrative, or professional capacity").  The first prong of the First-Filed Test requires that the causes of action in question deal with the same issues, and does not necessarily require that the statutes themselves be identical.  As Counts I-III involve the same issues as *Indergit*'s FLSA cause of action, the first prong of the First-Filed Test is satisfied.

Next, Plaintiff and Defendants dispute whether the parties to the *Indergit* action and the present case must be completely identical in order to satisfy the second prong of the First-Filed Test.  Plaintiff argues that the First-Filed Test is not implicated when different parties are present in the cases at issue.  (*See* Pl.'s Br. 7-8.)  Defendants assert that "the weight of case law in this district . . . holds that identical parties are not needed for application of the first-to-file rule."  (Defs.' Reply Br. 4.)  Nonetheless, District Courts in the Third Circuit have been consistent regarding whether the identity of the parties needs to be identical for First-to-Filed test to apply.  *See Abushalieh v. Am. Eagle Express, Inc.*, 716 F. Supp. 2d 361, 366 (D.N.J. 2010) ("[T]he presence of different defendants or different plaintiffs may result in cases that are not 'materially on all fours' with each other. . ."); *see also Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp. 2d 434, 453 (D.N.J. 2002) ("[T]he actions are not between the same parties, so this [c]ourt cannot dismiss this case under the first-filed rule."); *see also Ivy-Dry, Inc. v. Zanfel Labs., Inc.*, No. 08-4942, 2009 WL 1851028, at *6 (D.N.J. Jun. 24, 2009) ("[T]he proper focus is on subject

matter not parties[.]")[7]; *Siemens Fin. Servs., Inc. v. Open Advantage M.R.I. II L.P.*, No. 07-1229, 2008 WL 564707, at *4 (D.N.J. Feb. 29, 2008) ("[T]he Court will not address whether or not the proceedings must be 'truly duplicative' for the first-to-file rule to apply, [but] cases that involve the same parties and issues are within the ambit of the rule." (internal citation omitted)).[8]

In *Alvarez v. Gold Belt, LLC*, two different plaintiffs attempted to file collective action suits against the same defendant for violation of the FLSA while representing the same group of workers in the District of New Jersey. *Alvarez*, No. 08-4871, 2009 WL 1473933, at *3 (D.N.J. May 26, 2009). The *Alvarez* court found that the principles of the First-Filed rule were implicated and sought to avoid duplicative litigation and effect judicial comity. *Id.* at *2.[9] The *Alvarez* court denied plaintiff's motions without prejudice pending the resolution of the collective action certification issue in the other matter, noting that if "certified as a collective action, plaintiff will have the choice to either opt-in, or to continue with his own action separately." *Id.* at *4. Further, *Alvarez* court stated that "[b]y deferring judgment on plaintiff's motions, it will preserve his claim . . . while at the same time preventing the duplication of

---

[7] Certain District Courts in the Third Circuit have chosen to adopt "substantial overlap" rules from other circuits, which lowers standards for application of the first-filed rule to cases in which the parties are not identical to those in the previously-filed actions. *See Nature's Benefit, Inc. v. NFI,* No. 06-4836, 2007 WL 2462625, at *3 (D.N.J. Aug. 27, 2007) ("Neither identical parties nor identical issues are needed, only a 'substantial overlap.'") (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)); *see also Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharm. Corp.*, No. 05-898, 2005 WL 1116318, at *9 (D.N.J. May 10, 2005) ("The crucial inquiry of the first-filed rule is whether the issues substantially overlap; there is no requirement that the issues or the parties be identical.") (citing *Save Power Ltd.*, 121 F.3d at 950.) However, the Third Circuit has not formally adopted a "substantial overlap" rule.

[8] Next, "[o]nce a court finds that the first-filed rule applies, the Court must decided whether the later-filed action should be dismissed, stayed, or transferred pursuant to 28 U.S.C. § 1404(a)." *Abushalieh*, 716 F. Supp. 2d at 367.

[9] Specifically, the *Alvarez* court noted, "[t]hus, because the first-filed rule is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court, it does not technically apply to the case here. The principles behind first-filed rule, however, are implicated."

efforts, waste of judicial resources, and inconsistent results on the same legal issues presented to two separate courts." *Id.*; *see also Abushalieh*, 716 F. Supp. 2d at 366.

The parties in the present case are not identical to the parties in *Indergit*. The *Indergit* defendants include Rite Aid Corp., as well as Rite Aid of New York, Inc. and Francis Offor, neither of whom are part of the case before this Court. *See Indergit*, 2010 WL 2465488; (*see also* Pl.'s Br. 7-9.) Defendants in the present case include Rite Aid Corp., as well as Latka, who is not named as a part of the *Indergit* action. *See id.* However, the allegations pertaining to Counts I-III focus on Rite Aid's classification of Plaintiff and the alleged failure to compensate him appropriately for the type of work that he performed pursuant to NJWHL, NJWPA, and FLSA. (*See* First Am. Compl. ¶¶ 44-56.) The main paragraph in the Amended Complaint that demonstrates a relationship between the actions of Latka and the failure of Right Aid to pay overtime is Latka's alleged statement that "[Plaintiff] had no entitlement to overtime pay as he was a manager." (*Id.* ¶ 61.) Defendants point out that if this Court chooses not to apply the First-Filed rule to Counts I-III solely because the *Indergit* case and the present case contain unique defendants alongside Rite Aid, Plaintiff "could subject Rite Aid to vexatious and duplicative litigation in several district courts simply by adding a different individual defendant in each action while asserting the same claims against Rite Aid." (Defs.' Reply Br. 6.)

Ultimately, the facts pled by Plaintiff that pertain to a wage payment cause of action focus on Rite Aid. (*See* First Am. Compl. ¶¶ 35-56, 119-31.) As Plaintiff is already engaged in litigation against the same Defendant in a different District Court, the matter satisfies the second prong of the First-Filed Test with respect to Counts I-III. Thus, both prongs of the First-Filed Test are satisfied regarding Counts I-III.

Prospective members of FLSA collective actions against a particular defendant have the option to file individual FLSA claims against the same defendant rather than become a part of the collective action. *See Alvarez*, 2009 WL 1473933, at *4. In his opposition, Plaintiff claims to have withdrawn from the *Indergit* action in the Southern District of New York. (*See* Pl.'s Br. 7.) Plaintiff contends that "Defendant[s'] motion to dismiss under the First-Filed rule is effectively mooted[]" as a result. (*Id.*) However, Plaintiff's only support for his alleged withdrawal comes from paragraph fifty-two of an affidavit submitted with his opposition brief.[10] (*See id.*; *see also* Affidavit of Hanfi Mahmoud in Supp. of Pl.'s Br. ¶ 52, Dkt. No. 15-1.) Further, the evidence submitted with the affidavit only demonstrates that Plaintiff *sent* letters to two addresses "informing" them that he was withdrawing from *Indergit*. *(See* Dkt. No. 15-1, Exs. 1-3.)

In this instant, Plaintiff would have been able to file a cause of action including FLSA and New Jersey state claims at the same time that the *Indergit* action was taking place, so long as he was not a part of the *Indergit* action.[11] At this time, this Court will stay the matter regarding

---

[10] *See Flagship Interval Owner's Ass'n, Inc. v. Phila. Furniture Mfg. Co.*, No. 09-1173, 2010 WL 1135736, at *8 (D.N.J. Mar. 22, 2010) ("The facts that support these claims . . . are in Plaintiff's various affidavits submitted with their opposition to Defendant's motion, and the Court may not consider them as part of the present complaint.") (citing *Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004), *abrogated on other grounds by In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 347 (3d Cir. 2010) ("In deciding motions to dismiss pursuant to Rule 12(b), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."))

[11] The Court notes that there are additional facts alleged in this matter relevant to these claims. (*See* Am. Compl.) Further, allowing Plaintiff to maintain a cause of action in this instance is a separate matter from giving deference or consideration to another court dealing with similar issues.

Counts I-III, pending proof and documentation that Plaintiff has withdrawn from the *Indergit* action.[12]

### b. Defendants' Motion to Dismiss Counts IX-XI

In Counts IX-XI of the Amended Complaint, Plaintiff asserts claims for the following: breach of an express contract (Count IX); breach of the implied covenant of good faith and fair dealing (Count X); and breach of implied contract (Count XI). (*See* First Am. Compl. ¶¶ 179-93.).

Defendants rightly assert that a claim for breach of contract "'must identify the specific portions of the contract that it alleges were breached.'" (Defs.' Br. 17 (citing *Loceria Colombiana, S.A. v. Zrike Co., Inc.*, No. 10-5329, 2011 WL 735715, at *4 (D.N.J. Feb. 22, 2011)).) The only allegation Plaintiff makes regarding a contract with Defendants is that "Defendants had contractual obligations to plaintiff that were set forth in their oral representations and/or their handbook, termination letter, and other employment documents." (Am. Compl. ¶ 180.) Plaintiff asserts that Defendants breached these alleged obligations. (*See id.* ¶¶ 181, 186, 191.)

In the Amended Complaint, Plaintiff does not allege that a contract was formed with any specificity, oral or otherwise. Plaintiff did not submit documents such as the "handbook, termination letter, and other employment documents" with his Amended Complaint. Plaintiff's Amended Complaint states that he never received a termination letter. (*See* First Am. Compl. ¶¶ 113-14). Plaintiff asserts that "the handbook is not covered by any of the items courts may reference on a motion to dismiss." (Pl.'s Br. 14.) "In the absence of a contract, there can be no

---

[12] In the August 8, 2012 Letter, Defendants argue that "[c]ontrary to the suggestion of Plaintiff's counsel, however, the first-to-file rules applies even if Plaintiff is dismissed from the *Indergit* action." (Defs' Aug. 8, 2012 Letter 1-2.) However, for the reasons discussed above, the Court will stay this action with regards to Counts I-III.

breach of an implied covenant of good faith and fair dealing." (Defs.' Br. 25 (quoting *Noye v. Hoffmann-La Roche Inc.*, 238 N.J. Super. 430, 434 (App. Div. 1990)).) Here, Plaintiff has failed to adequately plead breach of an implied or express contract. As a result, Plaintiff's Amended Complaint also fails to state a claim for breach of the implied covenant of good faith and fair dealing. Plaintiff would like discovery to see if the claims asserted in Counts IX-XI are valid. (Pl.'s Opp'n Br. 12.) However, Plaintiff can instead amend the Amended Complaint if discovery reveals support for these claims.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion will be **GRANTED IN PART** as Counts IX-XI will be dismissed; however, this matter will be stayed with respect to Counts I-III pending formal documentation establishing that Plaintiff has withdrawn from the *Indergit* action.

s/Susan D. Wigenton, U.S.D.J.


Orig: Clerk
cc: Parties
　　 Magistrate Judge Arleo